UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                              CASE NO: 2:15-cr-29-FtM-29MRM

GEORGE JOYNER, III

_____

### OPINION AND ORDER

This matter comes before the Court on defendant's Motion to Suppress Evidence (Doc. #30) filed on May 12, 2015.   The Government's Response (Doc. #31) was filed on May 26, 2015.   The Court conducted an evidentiary hearing on June 9 and 15, 2015, and defendant submitted a Supplemental Memorandum (Doc. #49) on June 19, 2015.   The material facts which the Court finds have been established are set forth below, as well as the legal conclusions which follow from such facts.

## A.  Initial Traffic Stop

### (1)   Findings of Fact:

On August 10, 2013, Scott Newbury and Arturo Gonzalez, Jr., plainclothes officers of the Fort Myers Police Department's Violent Crimes Task Force, observed a person later determined to be defendant George Joyner, III (defendant or Joyner) driving a gray Ford in a high crime residential area within the City of Fort Myers.   According to Officer Newbury, the officers began following the Ford in their unmarked police vehicle because it appeared to

be a rental vehicle and there had been a lot of problems with stolen rental vehicles in that area of the city.  The officers had observed no traffic infractions at the point in time they decided to follow the Ford.  While defendant Joyner was known to the officers from prior contacts, the officers' activities at the time had nothing to do with him personally, they had no prior information about defendant, and his sighting was serendipitous.

As the Ford turned eastbound onto Dr. Martin Luther King Blvd., Sergeant Gonzalez observed that the driver was not wearing a seat belt.  Based only upon the seat belt violation, Sergeant Gonzalez requested that uniformed officers in the Violent Crimes Task Force conduct a traffic stop on the Ford.  The two plainclothes officers followed the Ford until the traffic stop was made.  As the officers were following the Ford, they observed defendant change lanes several times without using turn signals.  At least one of the lane changes cut off a white van as it drove eastbound, causing the van to apply its brakes.  Because it affected the flow of traffic, this lane change without signaling was a traffic infraction under Florida law.  State v. Riley, 638 So. 2d 507 (Fla. 1994).  Sgt. Gonzalez also observed the Ford go out of its lane of travel and nearly strike a metal guard rail before returning to its lane.

Uniformed officers Edward Quinn and Brandon Birch made the traffic stop of the Ford, which pulled over and stopped in the far

right lane of eastbound Dr. Martin Luther King Blvd. near Ortiz Avenue, in front of a gas station.   Officer Phillip Youngblood arrived shortly thereafter in a separate vehicle as backup. Officer Newburg and Sergeant Gonzalez positioned themselves across the street where they could observe the traffic stop, but could not hear any of the conversation.   Sgt. Gonzalez maintained periodic radio communication with at least some of the officers involved in the traffic stop.

> **(2)  Conclusions of Law:**

Defendant argues that the initial traffic stop of the Ford violated the Fourth Amendment.   The Court disagrees, and finds that the initial stop of Ford was lawful.

The stop of a motor vehicle by law enforcement officers is governed by the Fourth Amendment's reasonableness requirement, which is satisfied where the police have probable cause to believe that a traffic violation has occurred.   Whren v. United States, 517 U.S. 806, 810 (1996).   The subjective intentions of the officers play no role in the Fourth Amendment probable cause analysis.   Id. at 813.   It is not required that a theoretical "reasonable officer" with such probable cause would have made the traffic stop.   Id. at 811-16; Draper v. Reynolds, 369 F.3d 1270, 1275 (11th Cir. 2004); United States v. Holloman, 113 F.3d 192, 194 (11th Cir. 1997).

Driving a motor vehicle without wearing a seatbelt is a traffic violation under Florida law. Fla. Stat. § 316.614(4)(b) and (8). The Court found the testimony that defendant was driving the Ford without wearing a seatbelt to be credible. At the time of the events in this case, a police officer in Florida could conduct a traffic stop based solely on the driver's failure to wear a seatbelt. United States v. Gayle, 608 F. App'x 783, 789 (11th Cir. 2015); United States v. Joseph, 611 F. App'x 946, 947-48 (11th Cir. 2015). Thus, the officers' decision to have the vehicle stopped because the driver was not wearing a seatbelt was lawful, not pretextual. Additionally, before there was an actual seizure (i.e., the traffic stop), the officers observed at least one moving traffic violation when defendant changed lanes without using a turn signal which impacted the flow of traffic. Fla. Stat. § 316.155(1). The Court found this testimony credible, and this traffic violation also provided a basis for a constitutionally permissible traffic stop. Hurd v. State, 958 So. 2d 600 (Fla. 4th DCA 2007). Accordingly, the Court finds no Fourth Amendment violation with the stop of the vehicle driven by defendant.

**B. Exit from Vehicle, Arrest, and On-Scene Statements**

   **(1)   Findings of Fact:**

Officer Quinn did not observe defendant commit any traffic violations, but stopped the Ford at the request of Sergeant Gonzalez based upon the seat belt and lane-change violations.

After stopping the Ford, Officer Quinn approached the driver (the sole occupant of the vehicle), told him the reason for the traffic stop, and asked for a driver's license and registration. The driver, defendant Joyner, told Officer Quinn that he knew his license was suspended and gave Officer Quinn the license. Officer Quinn asked defendant to step out of the vehicle, which defendant did. Officer Quinn arrested defendant for the criminal offense of driving on a suspended license, and placed defendant in handcuffs. Officer Quinn confirmed the driver's license was in fact suspended and that defendant had received notice of the suspension, and then had defendant placed in the back seat of his patrol vehicle by Officer Youngblood. Officer Quinn also determined the Ford was registered to a rental company, and believes efforts were made to contact the rental company.[1]

After defendant was handcuffed, Officer Youngblood patted him down before placing him in the police vehicle, and removed a large sum of money from a wallet in defendant's pocket. The wallet was later determined to contain thirteen credit cards, gift cards,

---

[1] Officer Quinn's vehicle had equipment which made a video recording of the activities, although its audio did not work. Government Ex. 1. Officer Youngblood's vehicle was equipped with recording equipment, including a working audio. Government Ex. 2. The times on Officer Youngblood's recording are approximately four and one-half minutes earlier than those on Officer Quinn's, although the discrepancy is not material. For consistency, the Court will use or convert all times to those consistent with Officer Quinn's video.

bank information, medical prescriptions for another person, MoneyGram receipts, and a scrap of paper containing a name, date of birth and social security number of another person.

While defendant was handcuffed, but before he was placed in the police vehicle, Officer Youngblood allowed defendant to make a telephone call to his wife using defendant's own cell phone. Defendant also told Officer Youngblood quite insistently that he had $2,000 inside the center console of the car, and had prior problems with money seized by police disappearing.  Officer Youngblood relayed the information about the additional money in the vehicle to Officer Birch.

**(2)   Conclusions of Law:**

No constitutional violation occurred in this sequence of events.  A driver may be asked to exit a vehicle even if no arrest is going to take place.  Pennsylvania v. Mimms, 434 U.S. 106, 110-11, n.6 (1977) ("once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."). Defendant's statements to the officer about his suspended driver's license did not need to be preceded by any warnings under Miranda v. Arizona, 384 U.S. 436 (1966).  Berkemer v. McCarty, 468 U.S. 420 (1984).  Driving on a suspended license is a misdemeanor traffic offense in Florida, Fla. Stat. § 322.34(2), and Officer

Quinn had ample probable cause to believe that defendant had committed that offense in his presence.  Therefore, a full arrest for that offense was proper.  State v. Pugh, 635 So. 2d 999, 1000 (Fla. 2d DCA 1994).  Having lawfully arrested defendant, the officers were authorized to conduct a full search of defendant's person and to seize his wallet and examine its contents.  United States v. Robinson, 414 U.S. 218 (1973); Riley v. California, 134 S. Ct. 2473, 2488-89 (2014); United States v. Watson, 669 F.2d 1374, 1383-84 (11th Cir. 1982).

## C. Impoundment and Inventory of Vehicle

The seizure and search of the vehicle are more problematic. The government does not assert that the search was justified as a search-incident-to-arrest, nor could it under the facts of this case.  See Arizona v. Gant, 556 U.S. 332 (2009).  Rather, the government justifies the police conduct based upon the impoundment of the vehicle and an inventory search.  Although the legal principles overlap somewhat, it is important to separately determine the validity of the vehicle's impoundment (the seizure) and its inventory (the search).  "If a search is to be upheld under the inventory search doctrine, therefore, the police must first have the authority to impound the vehicle and must then follow the procedures outlined in the policy." United States v. Williams, 936 F.2d 1243, 1248 (11th Cir. 1991).

**(1)   Impoundment**

**(a)   Findings of Fact:**

Officer Quinn testified that the officers decided to impound and tow the vehicle because defendant was the only occupant of the Ford and was being arrested.  Officer Quinn further testified that it was Fort Myers Police Department policy to tow and inventory a vehicle when there is an arrest.  Officer Youngblood testified the decision to impound is discretionary, and that he exercised his discretion to have the Ford towed because defendant had stated he had prior problems with law enforcement officers losing property seized from him, the vehicle was a rental vehicle, and impoundment would increase the security of the items inside the vehicle.

After Officer Birch started the inventory search, but before Officer Youngblood opened the trunk as part of the inventory search, defendant's wife arrived and attempted to speak with defendant.  Officer Quinn told her to step back to the sidewalk. She identified herself to Officer Youngblood as defendant's wife, and requested that the officers turn the Ford and its possessions over to her.  The officers declined this request.  Officer Youngblood told her she could not get anything out of the Ford, and could not drive the vehicle away.  A representative of the rental company testified that defendant's wife was an authorized driver under the terms of the rental agreement.  Defendant,

however, was not an authorized driver during the time his driver's license was suspended.

The written policy of the Fort Myers Police Department, Government Ex. 12, provides that "[o]fficers are authorized to remove and impound or cause to be removed, to a tow company compound, any vehicle under the following circumstances: 1. When an arrest is made of the person operating the vehicle." Government Ex. 12, p. 2. The Policy further states that "[i]t shall be the policy of the Ft. Myers Police Department to: 1. Tow and inventory all vehicles in which the driver has been lawfully arrested." Id. at p. 9. If the owner of the vehicle is present, a duty supervisor has the discretion to return the vehicle to the registered owner, but not to a third person. Id. at p. 3. If certain determinations are made by the arresting officer, impoundment of the vehicle of a person arrested for driving under a suspended license is mandatory. Id. An inventory is required by the Policy when there is such an impoundment: "Officers shall inventory a vehicle when: 1. The driver of the vehicle has been lawfully placed under custodial arrest for any violation of Florida State Statutes, Federal Laws, or City Ordinances, and the vehicle in which the arrestee was occupying is going to be towed from, or driven by any law enforcement officer from the location where the arrest occurred." Id. at p. 9.

(b)   **Conclusions of Law:**

A police officer may only "impound a vehicle so long as the decision to impound is made on the basis of standard criteria and on the basis of something other than suspicion of evidence of criminal activity, but 'standard criteria' need not be detailed criteria." United States v. Johnson, 777 F.3d 1270, 1277 (11th Cir. 2015) (quoting Sammons v. Taylor, 967 F.2d 1533, 1541 (11th Cir. 1992)).  A police officer's decision to impound a car may involve discretion, but must nonetheless be made according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.  Colorado v. Bertine, 479 U.S. 367, 375 (1987).  "[T]he critical question . . . is not whether the police needed to impound the vehicle in some absolute sense, or could have effected an impoundment more solicitously, but whether the decision to impound and the method chosen for implementing that decision were, under all the circumstances, within the realm of reason." Sammons, 967 F.2d at 1543 (quoting United States v. Rodriguez-Morales, 929 F.2d 780, 786 (1st Cir. 1991)); see also United States v. Vladeff, No. 15-10947, 2015 WL 6715697, at *1 (11th Cir. Nov. 4, 2015).  Police officers do not have to allow a driver to make alternative arrangements in lieu of impoundment of the vehicle.  Bertine, 479 U.S. at 373-74; Sammons, 967 F.2d at 1540-43.  While Florida law formerly required officers to provide the option of alternative arrangements, this was no

longer Florida law at the time of these events assuming the officer acts in good faith.  Robinson v. State, 537 So. 2d 95, 96 (Fla. 1989); State v. Townsend, 40 So. 3d 103, 106 (Fla. 2d DCA 2010).

Here, the decision to impound the vehicle was lawful. Defendant was lawfully stopped for traffic violations.  Defendant was then lawfully arrested for knowingly driving while his license was suspended. While the record does not establish that Officer Quinn established all the factors necessary for a mandatory impoundment of the vehicle pursuant to the Policy, it was clearly the policy of the Fort Myers Police Department to impound the vehicle under the circumstances of this case.  The officers were not required by law to turn over the vehicle to a third person, even if she was an authorized driver, and were prohibited by their department policy from doing so.  While defendant argues that the mere existence of any discretion negates the validity of an impoundment, the court disagrees.  Bertine, 479 U.S. at 375-76; Florida v. Wells, 495 U.S. 1, 4-5 (1990).

   (2)  **Inventory**

      (a)   **Findings of Fact:**

Officer Birch started to inventory the vehicle at about 3:00 p.m., and searched the interior of the vehicle for about fifteen minutes.  Officer Youngblood testified that near the beginning of Officer Birch's inventory search, Officer Birch said he found white powder somewhere inside the vehicle and asked for a cocaine test

wipe swab.   Officer Youngblood obtained such a swab and gave it to Officer Birch, who at some point advised him that the substance had tested positive for cocaine.   There was not enough of the substance to seize, but Officer Birch asked Officer Youngblood if he searched defendant well.   This caused Officer Youngblood to return to defendant, remove him from the police car, and search him for contraband while Officer Birch continued to inventory the interior of the vehicle.   Officer Birch told Officer Youngblood he found money in the car, which was seized for inventory.   At one point defendant asked Officer Youngblood why the Ford was being searched and if he could get out and watch the search.   Defendant was not allowed to do so.

Officer Youngblood joined in the inventory search of the Ford, opening the vehicle's trunk at about 3:08 p.m.   Officer Youngblood found a computer bag and opened it, finding a laptop computer, various digital media storage devices, two credit card readers, a credit card encoder, numerous credit cards, gift cards, credit card "blanks", and various papers containing the names, dates of birth, and social security numbers of individuals.   Government Exs. 6A-6X.   Officer Youngblood removed the computer bag from the trunk at about 3:10 p.m. and placed the computer bag in Officer Quinn's vehicle.   Officer Youngblood testified that he had reason to believe the contents of computer bag was evidence of a criminal offense like fraud or a white collar crime ("something fishy going

on") which needed to be investigated for potential offenses of fraud or identity theft.   While he was suspicious, Officer Youngblood testified that there was no probable cause of criminal activity at the time the inventory began, or based solely on the computer case or the items in the computer case.

At about 3:15 p.m. Officer Birch opened the front hood of the vehicle, and was joined there by Officer Youngblood.   Apparently nothing unusual was found.   Officer Youngblood testified that Officer Birch was conducting an inventory by looking in places in the car where contraband or objects could be located or hidden. Officer Youngblood also testified that looking under the hood was not part of an inventory search, but was justified because of the presence of the substance which tested positive for cocaine. Officer Youngblood testified that while the search started as an inventory, it became an investigation based upon probable cause for narcotics being in the vehicle based upon the white powder.

The items seized by Officer Youngblood or Officer Birch were retained by the Fort Myers Police Department.   Officer Youngblood completed an inventory log, Government Ex. 3, which includes the items he found as well as those found by Officer Birch.   The evidence seized by the officers was logged in as either "evidence" and "inventory", id., and apparently both categories were ultimately placed in the police evidence room.

Defendant was issued three traffic citations, for driving with a suspended license, not wearing a seat belt, and failing to signal when changing lanes.  Government Exs. 7-10.  Officer Quinn transported defendant to jail before the tow truck arrived.  On December 6, 2013, defendant pled guilty to operating a motor vehicle without a driver's license and pled no contest to the seat belt and failure to signal violations.  Government Ex. 10.

(b)  **Conclusions of Law:**

The Supreme Court has held that inventory searches of legally impounded vehicles, conducted pursuant to an established procedure but without a warrant, are reasonable under the Fourth Amendment.  South Dakota v. Opperman, 428 U.S. 364, 372 (1976).  Opperman identified three distinct interests that justify the inventory search of a car upon impoundment: (1) the protection of the owner's property while it remains in police custody; (2) the protection the police against claims or disputes over lost or stolen property; and (3) the protection of the police from potential danger.  Id. at 369.  The government has the burden of showing that the requirements of the inventory search exception have been met.  Sammons, 967 F.2d at 1543.

Because an "inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence," "[t]he individual police officer must not be allowed so much latitude that inventory searches are turned into a purposeful and general

means of discovering evidence of crime." <u>Wells</u>, 495 U.S. at 4 (quotation omitted).  Thus, "standardized criteria or established routine must regulate the opening of containers found during inventory searches." <u>Id.</u> (citations omitted).  Although it is not the only permissible policy, a policy of "opening all containers . . . [is] unquestionably permissible." <u>Id.</u>

"If [a] vehicle has been lawfully impounded, the law enforcement officer may conduct an inventory search, including a search of closed containers, provided the search is conducted pursuant to standardized criteria." <u>Sammons</u>, 967 F.2d at 1543. An officer may open closed containers while conducting a valid inventory search.  <u>Bertine</u>, 479 U.S. at 743.  The existence of discretion does not negate the validity of an inventory search. <u>Bertine</u>, 479 U.S. at 375-76; <u>Wells</u>, 495 U.S. at 4-5.  The mere expectation of uncovering evidence does not vitiate an otherwise valid inventory search.  <u>United States v. Roberson</u>, 897 F.2d 1092, 1096 (11th Cir. 1990).  The inventory search may be thorough as long as it is consistent with the police caretaking function. <u>United States v. O'Bryant</u>, 775 F.2d 1528, 1534 (11th Cir. 1985).

The Court finds that the inventory of the Ford complied with these principles and was lawful.  Finding the cocaine residue and looking under the hood does not negate the validity of the inventory search.  <u>Michigan v. Thomas</u>, 458 U.S. 259 (1982).

## D. Defendant's Post-Arrest Custodial Statements

After arriving at the police station on August 10, 2013, defendant was advised of his <u>Miranda</u> rights and submitted to a recorded interview by Detective Wolfgang Daniel. Government Ex. 11. Defendant does not challenge the voluntariness of the statement, and given the lawfulness of the stop, arrest, and searches, there is no Fourth Amendment basis to suppress this statement.

## E. State Search Warrant

After defendant's arrest, Sgt. Gonzalez contacted Officer Walter Robert Mickey of the Fort Myers Police Department/FBI Task Force, advised him of the arrest and surrounding circumstances, and requested assistance in obtaining a search warrant to retrieve defendant's property from the police evidence vault. Officer Mickey wrote and signed a search warrant affidavit, and prepared a search warrant, which were submitted to and signed by a Florida County Court judge on August 15, 2013. The officers then removed the property from the evidence room and searched the various items.

### (1)  Fruit of Illegal Stop, Search, and Seizure

Defendant argues that evidence seized pursuant to the state search warrant must be suppressed as the fruit of the illegal stop, seizure, and search of the Ford. (Doc. #30, p. 6.) Since the Court has found no Fourth Amendment violation, there is no "poisonous tree" which would require suppression of derivative

evidence.  <u>Colorado v. Spring</u>, 479 U.S. 564, 571 (1987) (if there is no poisonous tree, there can be no fruit to suppress).

### (2)  Search Warrant Particularity Requirement

Defendant asserts that the state search warrant is invalid because it violates the particularity requirement of the Fourth Amendment.  (Doc. #30, p. 6.)  Specifically, defendant argues that the search warrant did not state with particularity what premises were to be searched (<u>Id.</u> at p. 5) and failed to describe with particularity the items to be searched (<u>Id.</u> at pp. 5, 10).

The Search Warrant, Government Ex. 5, finds probable cause to believe several fraud/theft state offenses have been committed. It then states that evidence connected with these crimes is current contained in 32 specifically identified items; these are the items which had been seized from defendant and/or his vehicle during the traffic stop, impoundment, and inventory search.  Without express discussion, the Search Warrant then lists seven items, which are simply further descriptions of the first seven items in the list of 32 items.  The Search Warrant then contains a list of 13 "Items To Be Searched and Seized".

The Eleventh Circuit recently summarized the Fourth Amendment requirements regarding the particularity of a search warrant:

> The Fourth Amendment requires that a search warrant particularly describe the place to be searched and the things to be seized. U.S. Const. amend. IV. A warrant which fails to sufficiently particularize the place to be

searched or the things to be seized is
unconstitutionally over broad. The
particularity requirement, however, does not
require elaborate specificity. The standard is
one of practical accuracy rather than
technical nicety. With regard to the place to
be searched, the warrant's description need
only have sufficient particularity to direct
the searcher, to confine his examination to
the place described, and to advise those being
searched of his authority. As to the materials
to be seized, a description is sufficiently
particular when it enables the searcher
reasonably to ascertain and identify the
things to be seized. If the applicant for the
warrant cannot give an exact description, but
has probable cause to believe that such
materials exist, the warrant is sufficiently
particular if it is as specific as the
circumstances and nature of the activity under
investigation permit.  Further, where it is
not feasible at the time the warrant is issued
to give an exact description of the materials
to be seized, the warrant satisfies the Fourth
Amendment's particularity requirement if it
limits the seizure of items to only those
items that constitute evidence of criminal
activity.

United States v. Rousseau, 14-14506, 2015 WL 6118716, at *3 (11th

Cir. Oct. 19, 2015) (citations and quotations omitted).

At the conclusion of the evidentiary hearing, defense counsel

conceded that law enforcement officers needed no search warrant to

retrieve defendant's property from the police evidence vault.

Defendant asserted, however, that a search warrant was required to

further examine or "open" certain of the property, such as the

computer related equipment.  Defendant is clearly correct that

while a search warrant was not required to retrieve the items from

police custody, a search warrant was required to open and further examine some of the items.  E.g., Riley v. California, 134 S. Ct. 2473, 2495 (2014) (warrant needed to search cell phone seized incident to an arrest); Walter v. United States, 447 U.S. 649 (1980) (warrant needed to view obscene movie films contained in several packages lawfully in the FBI's possession); United States v. Odoni, 782 F.3d 1226, 1237-38 (11th Cir. 2015) ("the fact that police have lawfully come into  possession of an item does not necessarily mean they are entitled to search that item without a warrant.").   No search warrant was required to retrieve and further examine items 8 through 32 as listed in the Search Warrant, and therefore the motion to suppress is denied as to these items whether the Search Warrant was valid or not.

In terms of describing the premises to be searched, the state Search Warrant clearly states that the location to be searched is the City of Fort Myers evidence vault.  After listing the items, the Search Warrant states:  "All devices and items of evidence were turned over [to] the Fort Myers Police Department evidence vault and are currently being stored at the Fort Myers Police Department."  Government Ex. 5, p. 2.  Defendant's argument that this does not satisfy this component of the particularity requirement is rejected.

As to the description of exactly what the warrant authorized the officers to search, the Search Warrant specifically described

a computer and related hard drive and thumb drives, a cell phone, and three credit card readers or encoders. Id. The Search Warrant authorized the search of these items for electronic data, correspondence, software, photographs, and other documents containing or related to the use of personal identification information. Id. at p. 3. The Search Warrant's description satisfies this portion of the particularity requirement, because it "enables the searcher reasonably to ascertain and identify the things to be seized." Rousseau, 14-14506, 2015 WL 6118716, at *3. Therefore, the Search Warrant satisfies the Fourth Amendment's particularity requirement, and defendant's motion to suppress on this basis is denied.

Accordingly, it is hereby

**ORDERED:**

Defendant's Motion to Suppress Evidence (Doc. #30) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this   2nd   day of December, 2015.

<br>

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record