UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GEORGE JOYNER, III,

        Petitioner,

v.                            Case No: 2:17-cv-489-FtM-29MRM
                                  Case No. 2:15-CR-29-FTM-29MRM

UNITED STATES OF AMERICA,

        Respondent.

_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #94)[1] filed on August 28, 2017. Petitioner also filed a Notice of 2255 Addendum (Cv. Doc. #8) on September 29, 2017. The government filed a Response in Opposition to Motion (Cv. Doc. #9) on October 30, 2017, to which petitioner filed a Reply (Cv. Doc. #11) on November 27, 2017. For the reasons set forth below, the motion is dismissed in part and denied in part.

**I.**

On March 4, 2015, a federal grand jury in Fort Myers, Florida returned an eleven-count Indictment (Cr. Doc. #1) against George

_____

[1]The Court will refer to the docket of the civil habeas case as "Cv. Doc.", and will refer to the docket of the underlying criminal case as "Cr. Doc."

Joyner, III (petitioner). Counts One through Five charged petitioner with theft of more than $1,000 in government money or property, in violation of 18 U.S.C. § 641; Counts Six through Ten charged petitioner with aggravated identity theft, in violation of 18 U.S.C. § 1028A; and Count Eleven charged petitioner with possession of 15 or more counterfeit and unauthorized access devices with intent to defraud, in violation of 18 U.S.C. §§ 1029(a)(3) and 1029(c)(1)(A)(i). On March 6, 2015, petitioner had his initial appearance before the magistrate judge (Cr. Doc. #4), and on March 10, 2015 had his arraignment (Cr. Doc. #10). On March 12, 2015, petitioner was released on pretrial conditions of release. (Cr. Docs. ## 16, 17.)

On May 12, 2015, defense counsel filed a Motion to Suppress Evidence (Cr. Doc. #30) which asserted that the initial stop of petitioner's vehicle, and the subsequent search and seizure of various items, violated the Fourth Amendment. After an evidentiary hearing before the district judge, the Court issued its Opinion and Order (Cr. Doc. #69) denying the motion.

On January 7, 2016, petitioner entered unconditional guilty pleas to Counts Two and Seven of the Indictment pursuant to a written Plea Agreement. (Cr. Docs. ## 75, 76, 78.) The pleas were accepted, and petitioner was adjudicated guilty of Counts Two and Seven. (Cr. Doc. #80.)

On April 25, 2016, the Court sentenced petitioner to 24 months imprisonment on Count Two, and a consecutive 24 months imprisonment on Count Seven, followed by a term of supervised release. (Cr. Doc. #84.) The remaining counts were dismissed by the government. Judgment (Cr. Doc. #85) was filed on April 26, 2016.

Petitioner did not file a direct appeal, and the conviction became final on May 10, 2016, fourteen days after the Judgment. See Mederos v. United States, 218 F.3d 1252, 1253 (11th Cir. 2000); Fed. R. App. P. 4(b)(1).

**II.**

Petitioner raises eight claims in his § 2255 motion and subsequent Addendum. In sum, petitioner asserts: (1) his attorney rendered ineffective assistance by failing to reserve the right to appeal the district court decision denying the motion to suppress (Ground One); (2) the investigation that stemmed from a simple traffic stop violated the Fourth Amendment (Ground Two); (3) the police, who are currently under investigation for corruption, planted drugs or falsely stated that a very small amount of drugs was found in the vehicle (Ground Three); (4) there was a violation of the Uniform Commercial Code (UCC) because petitioner accepted the charges in return for keeping them a civil matter, and therefore no criminal jurisdiction existed; petitioner was forced to accept the charges as criminal, in violation of the UCC (Ground Four); and (5) the prosecutor agreed to file a motion seeking a

one point downward departure "after sentencing was complete," but failed to do so (Ground Five).

By Addendum (Cv. Doc. #8), petitioner asserted the following additional claims: (6) petitioner received ineffective assistance of counsel because, as a beneficiary of the public entity, he told his attorney he wanted to settle the civil case, but was treated as a prisoner of war and his counsel said "he never heard of it and it wouldn't be right." (Ground Six); (7) there is a lack of jurisdiction since petitioner "is being held on the corporate entity" and petitioner demands the "Quo Warranto" be shown to prove the Court's jurisdiction, since the court's jurisdiction has been unconstitutional since the overthrow on June 30, 1864 and because his contract with the government is null and void (Ground Seven); and (8) there was a breach of contract because petitioner was forced to enter into a contract presented by the Federal Public Defender's Office or face harsher punishment, even though the crimes are commercial and therefore civil in nature (Ground Eight). Petitioner further argues that he is a living man being held by a corporate entity, and he never agreed that the matter could be handled criminally.

### III.

The United States asserts the § 2255 motion is not timely and should be dismissed. (Cv. Doc. #9, pp. 9-10.) Under 28 U.S.C. § 2255(f)(1), the only portion of the statute applicable in this

case, petitioner had one year from the date his conviction became final, or until May 10, 2017, to file the § 2255 motion. Petitioner executed his motion under 2255 on August 17, 2017, and the motion was filed on August 31, 2017. Under the prison mailbox rule[1], the motion is deemed filed on August 17, 2017, which is over three months late.

The record reflects that on January 30, 2017, prior to the expiration of the filing deadline, petitioner sought leave from the Eleventh Circuit to file a second or successive motion under 28 U.S.C. § 2255. (Cr. Doc. #93.) On February 28, 2017, the Eleventh Circuit denied the motion as premature because petitioner had not previously filed a motion under 28 U.S.C. § 2255. What petitioner had cited as his first § 2255 motion was actually the motion to suppress filed by his attorney prior to the guilty pleas. Petitioner was told "he may still file an Initial § 2255 motion in the district court". (Id.) While petitioner had approximately nine weeks left in which to file a timely motion, petitioner failed to do so within the appropriate time.

Petitioner argues that he should not be penalized for mistakenly filing his motion for leave with the appellate court.

---

1 Under the prison mailbox rule, "a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." Daniels v. United States, 809 F.3d 588, 589 (11th Cir. 2015) (per curiam) (quoting Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009), cert. denied, 556 U.S. 1269 (2009)). Without evidence to the contrary, the Court assumes that is when petitioner delivered it to the prison authorities. Id.

Petitioner also states that he tried numerous times to get the correct forms, and that he was in transit to another institution for a period of time which caused delays (Cv. Doc. #1, pp. 11-12.). Petitioner also states that "on 2 of the counts", the information had just become available. (Cv. Doc. #11, p. 4.)

A district court may review an untimely petition if petitioner is entitled to equitable tolling. Holland v. Florida, 560 U.S. 631 (2010). "[A] petitioner is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Id. at 2562 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999). As the Eleventh Circuit has summarized:

> The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence. [ ] As for the "extraordinary circumstance" prong, like the Supreme Court's articulation in Holland, we too have required a defendant to show a causal connection between the alleged extraordinary circumstances and the late filing of the petition. [ ]
>
> A court also may consider an untimely § 2254 petition if, by refusing to consider the petition for untimeliness, the court thereby would endorse a "fundamental miscarriage of justice" because it would require that an individual who is actually innocent remain imprisoned. [ ] The actual innocence exception is "exceedingly narrow in scope," and the petitioner must demonstrate that he is

> factually innocent rather than legally
> innocent. . . .
>
> The burden of proving circumstances that
> justify the application of the equitable
> tolling doctrine rests squarely on the
> petitioner. [ ] Mere conclusory allegations
> are insufficient to raise the issue of
> equitable tolling. [ ]

San Martin v. McNeil, 633 F.3d 1257, 1267-68 (11th Cir. 2011)

(internal citations omitted).

The record discloses no circumstances sufficiently extraordinary that were both beyond petitioner's control and unavoidable even with due diligence, and no fundamental miscarriage of justice. Accordingly, the § 2255 motion is untimely, and will be dismissed without prejudice.

Alternatively, the Court will assume the § 2255 motion is timely filed, and will address the substantive issues raised by petitioner.

### IV.

### A. Ground One: Ineffective Assistance of Counsel

In Ground One, petitioner asserts that his attorney rendered ineffective assistance by failing to reserve the right to appeal the district court decision denying the motion to suppress. (Cv. Doc. #1, pp. 4, 10.)

### (1) General Legal Principles

The legal standard for ineffective assistance of counsel claims in a habeas proceeding is well established. To prevail on

a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) prejudice resulted because there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. <u>Hinton v. Alabama</u>, ___ U.S. ___, 134 S. Ct. 1081, 1087-88 (2014) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694 (1984) and <u>Padilla v. Kentucky</u>, 559 U.S. 356, 366 (2010)). Defendant's Sixth Amendment right to counsel extends to the plea-bargaining process, and during plea negotiations defendants are entitled to the effective assistance of competent counsel. <u>Lafler v. Cooper</u>, 566 U.S. 156, 162–63 (2012). "Because a petitioner's failure to show either deficient performance or prejudice is fatal to a <u>Strickland</u> claim, a court need not address both <u>Strickland</u> prongs if the petitioner fails to satisfy either of them." <u>Kokal v. Sec'y, Dep't of Corr.</u>, 623 F.3d 1331, 1344 (11th Cir. 2010) (citations omitted).

The proper measure of attorney performance is simply reasonableness under prevailing professional norms considering all the circumstances. <u>Hinton</u>, 134 S. Ct. at 1088 (citations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time." <u>Strickland</u>, 466 U.S. at 689.  <u>See also</u>
<u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) (the Court looks to
facts at the time of counsel's conduct).  This judicial scrutiny
is highly deferential, and the Court adheres to a strong
presumption that counsel's conduct falls within the wide range of
reasonable professional assistance.  <u>Strickland</u>, 466 U.S. at 689-
90.  To be objectively unreasonable, the performance must be such
that no competent counsel would have taken the action.  <u>Rose v.</u>
<u>McNeil</u>, 634 F.3d 1224, 1241 (11th Cir. 2011); <u>Hall v. Thomas</u>, 611
F.3d 1259, 1290 (11th Cir. 2010).  Additionally, an attorney is
not ineffective for failing to raise or preserve a meritless issue.
<u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992);
<u>Ladd v. Jones</u>, 864 F.2d 108, 109-10 (11th Cir. 1989).

**(2)  Application of Principles to Ground One**

Petitioner pleaded guilty to two criminal offenses pursuant
to a written Plea Agreement. (Cr. Doc. #75.)  Nothing in the Plea
Agreement precluded petitioner from appealing the adverse Fourth
Amendment decision by the district court.  Petitioner's
unconditional guilty pleas, however, did waive his right to
challenge this decision on appeal, as petitioner was informed
during the guilty plea proceedings.  (Doc. #14-1, p. 9.)  Even if
the issue had been preserved, it would not have been successful on
appeal.  There has been no ineffective assistance of counsel with
respect to the guilty pleas.

It has long been the rule that "[a] defendant's unconditional plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects in that defendant's court proceedings." United States v. Pierre, 120 F.3d 1153, 1155 (11th Cir. 1997) (quoting United States v. Yunis, 723 F.2d 795, 796 (11th Cir. 1984)). This includes challenges to searches and seizures as violations of the Fourth Amendment. A valid guilty plea

> renders irrelevant—and thereby prevents the
> defendant from appealing — the
> constitutionality of case-related government
> conduct that takes place before the plea is
> entered. See, e.g., Haring [v. Prosise, 462
> U.S. 306, 320 (1983)] (holding a valid guilty
> plea "results in the defendant's loss of any
> meaningful opportunity he might otherwise have
> had to challenge the admissibility of evidence
> obtained in violation of the Fourth
> Amendment")."

Class v. United States, 138 S. Ct. 798, 805 (2018). "A defendant who wishes to preserve appellate review of a non-jurisdictional defect while at the same time pleading guilty can do so only by entering a "conditional plea" in accordance with Fed. R. Crim. P. 11(a)(2).[ ] The conditional plea must be in writing and must be consented to by the court and by the government." United States v. Pierre, 120 F.3d 1153, 1155 (11th Cir. 1997) (footnote omitted).

The record establishes that petitioner entered into unconditional pleas of guilty, which were made knowingly, voluntarily, and with the benefit of competent counsel. The

magistrate judge was meticulous in compliance with the Federal Rule of Criminal Procedure requirements, and by ensuring petitioner's understanding of the proceedings. (Cv. Doc. # 14-1.)

Before he entered his guilty pleas, petitioner knew his unconditional pleas would waive his ability to appeal the adverse Fourth Amendment decision. The magistrate judge conducting the guilty plea colloquy advised petitioner that his guilty pleas would waive defenses and his ability to challenge the manner in which the government obtained its evidence, including the decisions made in the case.

> THE COURT: . . . You may have defenses to the charges against you, but if you plead guilty you waive and give up your right to assert any defenses. Has your attorney explained the defenses you might have?
>
> MR. JOYNER: Yes.
>
> THE COURT: By pleading guilty you also waive and give up your right to challenge the way in which the government obtained any evidence, statement or confession in your case. In addition, by pleading guilty you may lose the right to challenge on appeal any rulings that the Court has made in your case.
>
> Mr. Joyner, do you fully understand all the rights you have and the rights that you waive by pleading guilty?
>
> MR. JOYNER: Yes.

(Cv. Doc. #14-1, p. 9.) Petitioner made "the determination not to appeal" (Cr. Doc. #88), and his appointed counsel was permitted

to withdraw (Cr. Doc. #90).

The only way petitioner could have pled guilty and still preserve his right to appeal the Fourth Amendment issue is with the consent of the government and the approval of the Court. Fed. R. Crim. P. 11(a)(2). The government did not give its consent, and the Court was not asked to consider giving consent for such a conditional guilty plea. As the Tenth Circuit has stated:

> His attorney's failure to negotiate a conditional guilty plea preserving the right to appeal the suppression issue cannot be unreasonably deficient performance because Mr. Webb had no right to enter a conditional guilty plea in the first place. United States v. Davis, 900 F.2d 1524, 1527 (10th Cir. 1990). Moreover, because negotiating such a plea would require the cooperation of both the government and district court-neither of which have any obligation in that regard-the ability to obtain a conditional plea agreement was beyond Mr. Webb's attorney's control.

United States v. Webb, 120 F.3d 271 (10th Cir. 1997). There was no deficient performance by defense counsel, and in light of the merits of the Fourth Amendment issue discussed below, no prejudice to petitioner. Ground One is denied on the merits.

**B. Ground Two: Fourth Amendment Violation**

In Ground Two, petitioner asserts the investigation that stemmed from a simple stop violated the Fourth Amendment, and therefore the district court's decision denying the motion to suppress was erroneous. (Cv. Doc. #1, p. 5.) The United States argues that petitioner procedurally defaulted this claim by not

raising it on direct appeal. (Cv. Doc. #9, pp. 11-18.)[2] The
Court concludes that this claim is procedurally defaulted, and
alternatively, is without merit.

**(1) Procedural Default**

To obtain collateral relief based on trial errors that were
not raised on direct appeal, petitioner must show both cause that
excuses his procedural default and actual prejudice resulting from
the errors of which he complains. United States v. Frady, 456
U.S. 152, 167-68 (1982). Cause for a procedural default exists
if some objective factor external to the defense impeded counsel's
efforts to comply with the procedural rule. Reece v. United
States, 119 F.3d 1462, 1465 (11th Cir. 1997). Alternatively, a
defendant may obtain collateral relief despite a procedural
default by establishing a fundamental miscarriage of justice.
Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994). To
establish a fundamental miscarriage of justice, petitioner must
"show that a constitutional violation has probably resulted in the
conviction of one who is actually innocent." Schlup v. Delo, 513
U.S. 298, 327 (1995) (quotation omitted). Petitioner must show

---

2 This appears to be the only claim which the government asserts
is procedurally defaulted, since it refers to "claim" and
petitioner has raised eight claims. In any event, a jurisdiction
defect cannot be procedurally defaulted. United States v.
DiFalco, 837 F.3d 1207, 1215 (11th Cir. 2016); Howard v. United
States, 374 F.3d 1068, 1071 (2004). Thus, the government has
forfeited this affirmative defense as to other claims. Burgess
v. United States, 874 F.3d 1292 (11th Cir. 2017).

that it is more likely than not that no reasonable juror would have convicted him in light of new evidence. Id. To be credible, a claim of actual innocence must be based on new, reliable evidence that was not presented at the trial. Id. at 316, 324.

Petitioner failed to raise the issue on appeal, and therefore has procedurally defaulted the Fourth Amendment issue. The record establishes that there was no cause which prevent an appeal, no resulting prejudice to petitioner, no fundamental miscarriage of justice, and no ineffective assistance of counsel. Even if the issue had not been waived by the guilty pleas, it was without merit because there was no Fourth Amendment violation. (See Cr. Doc. #69.)

Ground Two is procedurally defaulted and will be dismissed without prejudice. Alternatively, if not procedurally defaulted, the claim in Ground Two is denied as without merit.

### C. Ground Three: Police Corruption

In Ground Three, petitioner asserts a claim of "police corruption," asserting that the police involved in his case had planted drugs or falsely stated that a very small amount of drugs was found in the vehicle, and that the officers are currently under investigation. The Court assumes for purposes of the § 2255 motion that the officers are indeed under investigation.

In the Plea Agreement petitioner stated that he was "pleading guilty because defendant is in fact guilty." (Cr. Doc. #75, p. 16.) Petitioner admitted the truth of the following facts:

> On August 10, 2013, Fort Myers Police Officers on patrol observed that the driver of a gray Ford vehicle was not wearing a seatbelt. Furthermore, the driver was holding a cellphone in front of him. While continuing to drive next to the vehicle, officers observed that the gray Ford suddenly changed lanes. The gray Ford had not used any turn signal indicating a change of lane, and caused a white van to abruptly apply its brakes. A Fort Myers Police Officer subsequently conducted a traffic stop.
>
> The defendant, George Joyner, III, was the driver and sole occupant in the gray Ford vehicle. When the officer asked Joyner for his driver's license, the defendant advised that his license was suspended. After the officer confirmed through Fort Myers Police Department dispatch that Joyner's license was suspended and he had been given notice, Joyner was arrested for driving while license suspended. Further, he was cited for not wearing a seatbelt and failure to utilize a turn signal when changing lanes.
>
> Per the Fort Myers Police Department policy, an inventory of Joyner's vehicle was conducted prior to it being towed from the scene. While conducting the vehicle inventory, officers located a laptop case containing a Compaq laptop computer, various digital media storage devices, two credit card readers, a credit card encoder, numerous credit cards, gift cards, credit card "blanks" and several pieces of paper containing the names, dates of birth, and social security numbers of several individuals. Inside of Joyner's wallet, officers found thirteen various credit cards and gift cards, Chase bank account information, MoneyGram receipts, as well as scrap paper containing a name, date of birth

and Social Security number for another person. Further, officers observed that credit cards, some of which had account numbers handwritten on them, that had been found in Joyner's wallet matched the credit card "blanks" found in the black laptop case.

At the police department, post *Miranda* Joyner admitted to police that he had not been wearing his seatbelt. Furthermore, he admitted to swerving off of the road because he had dropped his cell phone. Joyner also acknowledged that he had received notice from the Florida Department of Highway and Motor Vehicles that his driver's license was suspended. When asked about several of the items located in the vehicle, specifically a credit card re-encoder and numerous blank credit cards, Joyner stated that he was looking into offering gift cards for his boutique store.

(Cr. Doc. #75, pp. 16-18.) At the guilty plea colloquy, petitioner admitted that was what he did, and that the factual statement was true. (Cv. Doc. #14-1, pp. 30-31.) As was set forth in the Opinion and Order (Cr. Doc. #69) denying the motion to suppress, the location of the small amount of drugs had no impact on the inventory search which was taking place, and the additional places which were searched as a result of the drugs being found resulted in no items of evidentiary value being seized. (Id. at 11-13.)

Ground Three of the § 2255 motion is denied as without merit.

**D. Grounds Four, Seven, Eight:  Jurisdictional Issues**

In Grounds Four, Seven and Eight, petitioner makes arguments which, read liberally, challenge the district court's subject matter jurisdiction and its personal jurisdiction over petitioner. Ground Four asserts the district court lacked subject matter jurisdiction because this case was really a civil matter, not a criminal matter, and petitioner was forced to accept the charges as criminal, in violation of the Uniform Commercial Code. (Cv. Doc. #1, pp. 8, 10.)  Similarly, in Ground Eight, petitioner asserts he was forced to enter into a contract presented by the Federal Public Defender's Office or face harsher punishment, even though the crimes are commercial and therefore civil in nature. (Cv. Doc. #8, pp. 2-3.)  Ground Seven asserts that "the collateral [i.e., petitioner] is being held on the corporate entity" [i.e., the government] and petitioner demands the "Quo Warranto" be shown to prove the Court's jurisdiction, which has been unconstitutional since the overthrow on June 30, 1864, and because his contract with the government is null and void.  (Cv. Doc. #8, p. 2; Cv. Doc. #11, pp. 2-9.)

As noted earlier, petitioner's valid unconditional guilty pleas do not waive his right to challenge the subject matter jurisdiction of the court.  While petitioner agreed in the Plea Agreement that the district court had the jurisdiction and authority to impose any sentence for the criminal offense (Cr.

Doc. #75, p. 14), this is not dispositive because the parties cannot give a federal court subject matter jurisdiction by stipulation.

Subject matter jurisdiction defines the Court's authority to hear a given type of case. United States v. Brown, 752 F.3d 1344, 1348 (11th Cir. 2014). For federal crimes, the district courts are granted original jurisdiction by 18 U.S.C. § 3231. Id. As such, what matters for purposes of the district court's jurisdiction is that the government filed an indictment charging petitioner with violating the "laws of the United States." Id. The Indictment in this case charged petitioner with committing various offenses against the United States, and therefore established subject matter jurisdiction. Nothing in the UCC or petitioner's reference to a contract adversely impacts the presence of such jurisdiction, and petitioner's arguments to the contrary are frivolous. Grounds Four, Seven and Eight are denied.

**E. Ground Five: Prosecutor's Promise To File Motion**

In Ground Five petitioner argues that the prosecutor agreed in the Plea Agreement to file a motion for a one level departure "after sentencing" was complete, but failed to do so. (Cv. Doc. #1, p. 9.) Petitioner also asserts this is a basis for a claim of ineffective assistance of counsel. (Cv. Doc. #11, p. 3.) This issue relates to a motion for the third level reduction for acceptance of responsibility. (Cv. Doc. # 11, p.3.)

The Plea Agreement contains the following agreement concerning acceptance of responsibility adjustment:

> At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.
>
> Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., **the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.** The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

(Cr. Doc. #75, pp. 4-5 (emphasis added).) During the change of plea hearing colloquy, the Magistrate Judge reviewed this provision with petitioner:

> Mr. Joyner, the United States agrees to recommend that you receive a two-level downward adjustment to your guidelines offense level if it doesn't later receive any adverse

information indicating that that
recommendation is unwarranted. The United
States also agrees to consider filing a motion
for another one level downward adjustment to
your guidelines offense level, but the plea
agreement explains that the decision to file
such a motion rests solely with the United
States attorney and you agree that you won't
challenge that decision. Do you understand
that?

MR. JOYNER: Yes.

THE COURT: And do you agree to that?

MR. JOYNER: Yes.

(Doc. #14-1, Attachment A, p. 20.)

As is its routine practice in this Division, the U.S.
Attorney's Office failed to file a motion pursuant to U.S.
Sentencing Guidelines Manual § 3E1.1(b) for a downward adjustment
of one additional level, despite an implicit finding that
petitioner was eligible for such a further reduction. Rather than
follow its written promise, the U.S. Attorney's Office simply fails
to object to the finding in the Presentence Report that a defendant
is eligible for such an additional reduction. That is what
happened in this case. The Presentence Report calculated the
Sentencing Guideline range after giving petitioner adjustments of
three levels for acceptance of responsibility. (Cr. Doc. #82, ¶¶
43-44.) There were no objections to the application of the
guidelines at sentencing (Doc. #14-2, p. 5), and therefore
petitioner received the benefit of the third level despite the
absence of a formal motion by the government. Since petitioner

received all he was entitled to, any error in failing to file a motion is harmless and there was no ineffective assistance of counsel.  Ground Five is denied.

**F. Ground Six: Ineffective Assistance of Counsel For Not Having Case Treated as Civil Case.**

In Ground Six, petitioner asserts that he received ineffective assistance of counsel when counsel failed to settle the case as a civil case, and petitioner was treated as a prisoner of war.  (Cv. Doc. #8, p. 1.)  The same legal principles regarding ineffective assistance of counsel discussed with regard to Ground One apply to this claim.  Petitioner's claim is frivolous.  This case was always a criminal case, not a civil case, and neither petitioner nor his attorney had the ability to compel the government to treat it as a civil matter.  Defense counsel need not raise meritless issues.  Ground Six is denied.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.   Petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #94) is **DISMISSED** as time-barred and procedurally defaulted, and alternatively **DENIED on the merits.**

2.   The Clerk of the Court shall enter judgment accordingly and close the civil file.  The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

**IT IS FURTHER ORDERED:**

**A CERTIFICATE OF APPEALABILITY (COA) AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE DENIED.**  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 183 (2009).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(B)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)(citations omitted).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** at Fort Myers, Florida, this   16th   day of April, 2018.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Petitioner
AUSA